UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| LUIS ALFREDO RENOX LOPEZ,<br><br>Petitioner,<br><br>v.<br><br>DAIVD T. WESLING; MARKWAYNE MULLIN; U.S. DEPARTMENT OF HOMELAND SECURITY; TODD BLANCHE, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; MICHAEL NESSINGER<br><br>Respondents. | C.A. No. 1:26-cv-00457-MSM-PAS |

**MEMORANDUM AND ORDER**

Mary S. McElroy, United States District Judge.

Before the Court is Petitioner Luis Alfredo Renox Lopez's Motion to Enforce this Court's July 31, 2026, Order that Petitioner be provided with bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a).

On July 14, 2026, Petitioner, a native and citizen of Guatemala, filed a Petition for Writ of Habeas Corpus. (ECF No. 1.) This Court granted the Petition on July 31, 2026, and ordered Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within 7 days of the Order. Text Order, July 31, 2026. On August 7, 2026, the Respondents filed a Status Report providing that, consistent with the Court's Order, the Immigration Court conducted a bond hearing on Thursday, August 6, 2026, and that the Immigration Judge ("IJ") had concluded the hearing without

rendering an oral decision and said that the matter would be taken under advisement with a written decision issuing within 24-48 hours. (ECF No. 4.) On August 11, the Respondents also reported that on August 10 the Petitioner was denied bond because the IJ found that the Petitioner posed a danger to the community and was a flight risk. (ECF No. 5-1.) On August 25, 2026, the Petitioner filed the instant Motion. (ECF No. 6.)

In his Motion, the Petitioner argues he is entitled to relief because: (1) as a matter of law, the evidence did not satisfy the government's burden to prove that he is dangerous by clear and convincing evidence; and (2) the IJ failed to consider alternatives to incarceration to manage any flight risk. *See id.* ¶6. In response, the Respondents make several arguments, including (1) that 8 U.S.C. § 1226(e) deprives this Court of jurisdiction to review the IJ's decision, (2) that the Petitioner failed to exhaust his administrative remedies by not appealing the detention ruling to the BIA, and (3) that the IJ's determination was legally supported by the record. (ECF No. 7.)

For the reasons that follow, having reviewed the parties' papers and exhibits, this Court finds that the IJ's determination was constitutionally insufficient and orders Petitioner released subject to reasonable conditions.

## I. BACKGROUND

The Petitioner is a Guatemalan national, present in the United States since 2009. He owns and operates a masonry business, has paid taxes for many years, and is married to a U.S. citizen. On April 16, the Petitioner was involved in an altercation

with his stepson, that resulted in both of their arrests—with the Petitioner charged with simple assault and his stepson charged with felony assault.

While the criminal matter has not been resolved, the Petitioner alleges that his stepson attacked him by hitting him over the head with a chair after overhearing the Petitioner and his wife discussing needing to move to a different apartment without the stepson. The stepson's account, as reflected in the police report, is that the Petitioner initiated the altercation by choking him. The police report contains pictures of both men, including evidence of a laceration on the Petitioner's head that required multiple stiches, and two photos of the stepson that show a red scratch along his left collar bone. *See* ECF 6-2. The Petitioner was arrested by ICE on May 8, 2026, and is currently in detention at Wyatt Detention Center in Central Falls, Rhode Island.

## II. DISCUSSION

### A. Jurisdiction

Before reaching the merits of the Petitioner's Motion, the Court must first assure itself of its jurisdiction. The Respondents argue that 8 U.S.C. § 1226(e) bars review of the IJ's decision, while acknowledging that this Court has rejected that argument and raising it to preserve it for appeal. (ECF No. 7 at 3 & n.1.) Section 1226(e) bars review only of an IJ's "discretionary judgment," *Saint Fort v. Ashcroft*, 329 F.3d 191, 200 (1st Cir. 2003); it does not bar review where a "bond denial is challenged as legally erroneous or unconstitutional," *Mayancela Mayancela v. FCI Berlin, Warden*, No. 25-cv-348-LM-TSM, 2025 WL 3215638, at *6 (D.N.H. Nov. 18,

2025. *See also Higiro v. Nessinger*, No. 26-cv-105-JJM-AEM, 2026 WL 710297, at *4 (D.R.I. Mar. 13, 2026) (collecting this District's cases). The Petitioner's claims that the Government's evidence could not satisfy the clear-and-convincing standard due process requires and that the IJ failed to consider alternatives to detention, are of that kind. The Court also retains authority to determine whether its own Order was complied with. *See, e.g.*, *Gentry v. Deuth*, 456 F.3d 687, 692 (6th Cir. 2006).

The Court is therefore satisfied that Section 1226(e) does not divest it of subject-matter jurisdiction to review the Petitioner's claim.

**B. Exhaustion**

Aside from the jurisdictional argument, the Respondents mount an additional challenge to the Petitioner's claim, asserting that he should have to exhaust his administrative remedies before pursuing relief in this Court. (ECF No. 7 at 6-10.) That argument is unavailing.

No statute requires exhaustion under the present circumstances. *See Garcia*, 2025 WL 3466312, at *6. Instead, this case is governed by the "more permissive" common-law exhaustion standard. *Brito v. Garland*, 22 F.4th 240, 256 (1st Cir. 2021). Under this standard, the Court may find exhaustion to be unnecessary where "a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim." *Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997) (citing *McCarthy v. Madigan*, 503 U.S. 140, 147 (1992)); *see also Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986) ("[E]xhaustion might not be

required if [the petitioner] were challenging her incarceration … or the ongoing deprivation of some other liberty interest.").

As this Court has found repeatedly, the loss of liberty endured by a noncitizen in ICE custody is a "severe form of irreparable injury." *Garcia*, 2025 WL 3466312, at *6 (quoting *Ferrara v. United States*, 370 F. Supp. 2d 351, 360 (D. Mass. 2005)); *see also Tomas Elias v. Hyde*, No. 25-cv-540-JJM-AEM, 2025 WL 3004437, at *3 (D.R.I. Oct. 27, 2025). As an individual detained under Section 1226(a), the exact length of the Petitioner's detention "is impossible to predict" and will likely be "quite lengthy." *Hernandez-Lara*, 10 F.4th at 29. Accordingly, the Court will now proceed to the merits of the Petitioner's claim.

**C. The Merits**

**1. Standard of Review**

The First Circuit has held that placing the burden on noncitizens to prove at their bond hearings that they do not present a danger to the community or pose a flight risk is a violation of the Fifth Amendment's Due Process Clause. *Hernandez-Lara*, 10 F.4th at 39, 41. Instead, the Government bears the burden of proving "by clear and convincing evidence that [the noncitizen] poses a danger to the community," or "by a preponderance of the evidence that [the noncitizen] poses a flight risk." *Id.* at 41.

Thus, "to obtain habeas relief, the noncitizen must show that the IJ 'failed to place the burden of proof on the Government' to either show dangerousness by clear and convincing evidence or flight risk by a preponderance of the evidence." *Picado*,

2026 WL 352691, at *6 (quoting *Mayancela Mayancela*, 2025 WL 3215638, at *5). The noncitizen can make this showing either by: (1) demonstrating that the IJ erred because the evidence itself could not, as a matter of law, have supported the IJ's decision to deny bond; or (2) pointing to the IJ's opinion itself and showing that the IJ failed to apply the correct standard to the facts. *Garcia*, 2025 WL 3466312, at *7 (citing *Hechavarria*, 358 F. Supp. 3d at 240).

The Court is of course mindful of the need "to afford a degree of deference to the IJ's findings of fact and weighing of evidence." *Picado*, 2026 WL 352691, at *6 (citing *Hechavarria*, 358 F. Supp. 3d at 240); *see also United States v. Tortora*, 922 F.2d 880, 882 (1st Cir. 1990). Yet "[m]erely stating the proper standard does not discharge the obligation to correctly apply the standard." *Akinsanya v. Garland*, 125 F.4th 287, 297 (1st Cir. 2025).

**2. Analysis**

The fact that Petitioner has not been convicted of the assault charge against him does not automatically cancel out its evidentiary value, "as even charges that do not result in a conviction can form the basis for denial of relief." *See Lee v. Barr*, 975 F.3d 69, 76 (1st Cir. 2020) (finding no abuse of discretion in an immigration judge's reliance "on the detailed substance of [a police] report, including the officer's recitation of what he observed," in denying a motion to continue proceedings, even though the charges stemming from the reported incident were dismissed); *see also In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006) (approving use of any "probative and specific" evidence in the record). Likewise, an immigration judge "is not bound by

formal hearsay rules," although "[h]ighly unreliable hearsay might raise due process problems." *Yongo v. INS*, 355 F.3d 27, 31 (1st Cir. 2004). As a result, the IJ did not necessarily err by considering the fact of arrest and charge, nor by considering the hearsay testimony embodied in the police reports.

Here, the IJ's dangerousness finding rested on two factors, neither of which carries the Government's burden. In one paragraph, the IJ identified two factors supporting the determination: (1) Petitioner's April 2026 arrest and charge of domestic simple assault and disorderly conduct, and (2) Petitioner's 2015 charge of sexual conduct for a fee. (ECF No. 7-3 at 4-5.)

Taking these in reverse order, the only record of the 2015 charge is an I-213 form that contains no detail regarding the substance of the charge. (ECF No. 6-1 at 124-129.) An uncorroborated I-213 alone is insufficient to sustain the Government's burden of clear and convincing evidence. *España*, No. 1:26-cv-00014-JJM-PAS at *11 (D.R.I. Mar. 25, 2026); *cf. Rosa Pineda v. Nessinger*, 2025 WL 3267328, at *1 (D.R.I. Nov. 24, 2025) ("[A]n uncorroborated police report cannot, alone, be 'clear and convincing evidence sufficient for a finding of dangerousness.'"). Although the IJ wrote that "the Court considered not only the nature of Respondent's criminal offense, but 'also the specific circumstances surrounding [Respondent's] conduct,'" (ECF No. 7-3 at 5 (citing *Matter of Siniauskas*, 27 I&N Dec. 207, 208-209 (BIA 2018); *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006))), this Court does not see how—in the absence of any details on the record about the 2015 offense—the IJ can have considered any factor regarding the 2015 charge other than its existence. Accordingly, reliance on

this factor does not support the finding of dangerousness by clear and convincing evidence.

As recognized by Respondents, an IJ may only rely on a police report if they "first determine[] that the report is reliable and that its use would not be fundamentally unfair." *Arias-Minaya v. Holder*, 779 F.3d 49, 54 (1st Cir. 2015). The "fundamental fairness" requirement is satisfied when, alone, the Petitioner is provided an opportunity to rebut the evidence. *Rosa v. Garland*, 114 F.4th 1, 12 (1st Cir. 2024). As Petitioner was given the opportunity to rebut the evidence regarding the police report at the bond determination hearing, the "fundamental fairness" hurdle was met. The IJ still had the burden of establishing that the police report was reliable. *Arias-Minaya*, 779 F.3d 49. Simply stating that "the police report [was] sufficiently reliable," ECF No. 7-3 at 4, does not meet this burden. *Akinsanya*, 125 F.4th 287; *see also Mayancela v. FCI Berlin, Warden*, 2025 WL 3215638, at *6 (D.N.H. Nov. 18, 2025) (citing *Barnica-Lopez v. Garland*, 59 F.4th 520, 530 (1st Cir. 2023)) ("IJs generally must sufficiently explain their reasoning to permit appellate or judicial review of their decisions.").

The IJ's only description of the police report's contents was a single sentence: "The police report explains that the Respondent was engaged in a physical altercation with his stepson, which resulted in both parties needing medical treatment." (ECF No. 7-3 at 4.) The IJ did not address the fact that the police report contains the statements of two witnesses, Petitioner and his stepson, that are in direct conflict with each other. (ECF 6-2.) According to the Petitioner's statement in the police

report, the altercation occurred as a result of his 27-year-old stepson attacking him with a chair. *Id.* According to the stepson's statements made to the police the altercation began when the Petitioner reportedly "choked" him. *Id.* Although officers arrived while the altercation was in progress, no officer witnessed how it began. *Id.* The IJ's decision does not address the fact that the stepson was charged with "Felony Assault and Battery," and that Petitioner was charged only with "Simple Assault and Battery. The record does contain some evidence that might bear on the stepson's account, including his complaint of neck pain to the responding officers and a photograph taken at the scene showing a scratch near his collarbone. But, as in *Rosa Pineda*, "there is no indication that the immigration judge considered anything other than the police report itself," and it is not this Court's role to weigh that evidence in the first instance or to supply findings the IJ did not make. 2025 WL 3267328, at *1. Nor did the IJ explain what evidence supported the conclusion that Petitioner was *presently* dangerous. *See Garcia v. Hyde*, 817 F. Supp. 3d 112, 129 (D.R.I. 2025) (requiring the IJ to employ effort to determine whether past dangerous conduct was *presently* likely to be repeated). Because the IJ found the police report reliable without addressing the conflicting accounts it contains or identifying any evidence corroborating the stepson's version of events, and because the only other basis for her decision was a decade-old charge reflected solely in an I-213, the Government did not carry its burden of proving by clear and convincing evidence that Petitioner poses a danger to the community. *See Rosa Pineda*, 2025 WL 3267328, at *1.

The IJ also determined that the Petitioner was a flight risk. (ECF No. 7-3 at 4.) An IJ must consider alternatives to detention as part of their assessment of flight risk at bond hearings. *Higiro v. Nessinger*, 2026 WL 710297, at *7 (D.R.I. Mar. 13, 2026); *Doe v. Tompkins*, 2019 WL 8437191, at *2 (D. Mass. Feb. 12, 2019), *aff'd*, 11 F.4th 1 (1st Cir. 2021) ("The immigration court shall properly allocate the burden of proof and consider alternative methods to ensure the safety of the community and Doe's future appearances like GPS monitoring."). This is so because "requiring an IJ to consider alternatives to detention at a bond hearing helps to ensure that detention is not arbitrarily imposed and that it bears a reasonable relation to the Government's interests." *Higiro*, 2026 WL 710297, at *8.

Here, the IJ discussed alternatives to detention as part of the dangerousness analysis but did not address them in the paragraph of the order concerning flight risk. (ECF 7-3 at 5.) Although that paragraph notes that Petitioner's possession of "counterfeit money" when he "was taken into custody … gives the Court some pause," the IJ does not explain how Petitioner's possession of ten $100 bills marked "For Motion Picture Purposes Only," affected the flight risk analysis.

The Respondents argue that Petitioner waived any claim regarding alternatives to detention because he did not ask the IJ to consider them with particularity. (ECF No. 7 at 16-17 (citing *Brito*, 22 F.4th at 256).) The Court disagrees. In *Brito*, the First Circuit found such a claim unexhausted where the petitioners were no longer detained and had not asked the IJs overseeing their cases to consider alternatives. *See Higiro*, 2026 WL 710297, at *6 (distinguishing *Brito*'s

exhaustion holding on that basis). Here, Petitioner remains detained, and his written submission to the IJ expressly asked that, if she were inclined to find him a flight risk, she "set a bond high enough to ameliorate any concerns, as well as consider alternatives to detention." (ECF No. 6-1 at 3.) The IJ's decision addresses neither request.

Because the Government did not carry its burden of proving dangerousness, and the IJ's flight-risk analysis was constitutionally deficient, the August 10, 2026, Bond Order holding the Petitioner in continued detention is unlawful.

The Court declines to order another bond hearing. The Government had a full opportunity at the August 6th hearing to present evidence of dangerousness and flight risk, and the evidence the IJ relied upon cannot satisfy its burden. As in *Rosa Pineda*, where the Court ordered release after finding that the Government had not carried its burden, release is the appropriate remedy. 2025 WL 3267328, at *1. Because Petitioner has not previously been released on bond, the Court orders his release subject to reasonable conditions.

## III. CONCLUSION

For all these reasons, the Petitioner's Motion to Enforce Judgment (ECF No. 6) is GRANTED as follows. The Respondents are ordered to immediately release the Petitioner subject to reasonable conditions. The Court permits the Petitioner's transfer to effectuate his release and the return of his property.

IT IS SO ORDERED.

Mary S. McElroy
United States District Judge
October 1, 2026